Cole, Judge,
delivered the opinion of the court:
Appellant in this case has appealed from a decision of the Board of Appeals of the United States Patent Office, sustaining the rejection by the Primary Examiner of claims 32, 52, 53, and 54 of appellant’s application serial No. 100,823 for patent on a screw extrusion press, on the ground of lack of invention over the prior art.
Claim 32, which is typical of the appealed claims, is as follows:
32. A screw extruder for manufacturing articles from a material formable under heat, comprising in combination, a stationary casing having an inner wall and an inlet opening for the material; a screw rotatably mounted in said casing coaxially thereof, said screw upon rotation conveying the material entering through said inlet opening through the casing; a nozzle head forming the outlet of said casing; heating and cooling means in said casing for keeping the temperature of the material in said casing substantially constant; said casing having straight longitudinal grooves in its inner wall extending in the direction of the axis of said easing up to said nozzle head, said grooves forming interruptions of the surface of the inner wall of said easing, whereby said grooves receive quantities of the material sufficient for preventing a tangential movement and sliding of the material on the inner wall of said casing so as to render impossible a sticking of the warm material to said screw during the conveying of the material through the casing.
The references relied on are:
Hale, 72,393, December 17, 1867.'
Sharpneck, 858,354, June 25,1907.
Royle, 2,200,997, May 14, 1940.
Appellant’s application discloses as the preferred embodiment of his invention an apparatus for simultaneously extruding two different materials in such a manner that one of them forms a solid core and the other a coating or casing surrounding the core and bonded to it. Although the application does not state the specific commercial usé of the invention, counsel at oral argument stated that appellant’s apparatus had been successfully used in the manufacture of lead pencils, wherein a core of graphite is covered by a coating consisting of wood fiber and a binder. The apparatus comprises two cylindrical casings arranged coaxially, one within the other, and of such size that an annular space is provided between them. A longitudinally extending feed screw is fitted within the inner casing and an annular, longitudinally extending feed screw is fitted into and substantially fills the space between the casings. Material to be extruded is fed through a transverse opening to the interior of the inner casing and *996 another material is fed through a similar opening to the annular space between the casings.
The two feed screws are constantly rotated, so that the materials are advanced by the screws uniformly and under pressure toward one end of the apparatus, at which there is an extruding nozzle. The nozzle is provided with a central passage to which the material from the inner casing passes, and with radially converging passages which receive the material moving through the space between the casings and conduct it inwardly so that it contacts and surrounds the first mentioned material, thus forming a composite extruded article.
The inner walls of the cylindrical casings are formed with spaced straight grooves which extend longitudinally in the direction of the axis of the casings and which cause the material to be scraped or removed from the feed screws, thus preventing clogging and permitting a uniform feed which is essential to the production of a smooth article. The specification of appellant’s application states that ribs may be provided instead of grooves and that the grooves “can be arranged longitudinally and/or transversally.”
The patent to Hale discloses a device for cutting and working-fibrous substances, comprising a casing in which two interengaging screws are mounted for rotation about parallel axes. The screws are provided with helical threads which serve to crush or cut up material fed to the casing and to force it through an outlet at one end. The inner walls of the casing are provided with spiral ribs which by inclining towards the discharge end of the machine act in combination with the screws to feed the material toward the outlet.
The Sharpneck patent shows a device for cutting peat, comprising a helical screw which is rotatable in a casing provided with a helical rib on its interior wall. The casing and screw are rotated in opposite directions, so that the peat is cut up between the screw and the rib.
The Royle patent relates to a device for breaking up and extruding-crude rubber, and comprising a screw mounted for axial rotation in a cylindrical casing having numerous rings or vanes extending from its inner wall to cooperate with the screw in breaking up the rubber. It is stated in the patent specification that the arrangement is such that it “prevents a series of interior axial grooves being established in the set of rings 14 and produces a series of sinuous or zigzag interior channels,” so that forward movement is strongly resisted and a severe breaking up action results.
It will be apparent from the foregoing that none of the references discloses a casing having straight longitudinal grooves extending in an axial direction. Accordingly, none of the appealed claims is fully met by the references.
*997 It was the opinion of the examiner and the board that the various arrangements of spiral ribs and grooves shown by the references are equivalent to straight longitudinal grooves. In support of that opinion, reliance was placed principally on the statement in appellant’s specification that the grooves “can be arranged longitudinally and/or transversally.” The board stated that this was an admission of equivalence which “precludes any conclusion that use of straight longitudinal grooves as compared with transverse grooves or ribs is critical,” citing In re Lindberg, 39 C. C. P. A. (Patents) 866, 194 F. 2d 732, 93 USPQ 23.
The Lindberg casé is representative of a number of decisions dealing with statements of equivalency in applications. Another such decision, In re Brocherdt et al., 39 C. C. P. A. (Patents) 1045, 197 F. 2d 550, 94 USPQ 175, cites a number of prior decisions and states the basic principal as follows :
It Ras been Reid many times by this court tRat wRere tRe disclosure of an application gives two materials or operations as equivalents, sucR disclosure alone may be sufficient for 1be rejection of a claim specific to one equivalent wRere tRe otRer appears in tRe prior art.
The principle just stated, however, does not become applicable until it has been shown that one of the things which are stated in the application to be equivalent is old in the art. In order to determine just what the present application sets forth as equivalents it is necessary to consider the entire paragraph in which the alleged admission of equivalence is found. That paragraph is as follows:
According to the present invention tRe material to be worked up is fed into tRe pressing screw or screws tangentially or radially, by means of one or more conveyer screws, wRicR are mounted for rotation in cylinders whose cylindrical surface is formed witR interruptions, tkrougRout its lengtR or over part of its lengtR only, wRicR interruptions take tRe form of recesses of any sRape and wRidR [sic] can be arranged longitudinally and/or transversally and whose size and mutual distanc'e is adapted to tRe actual field of application. Ribs or tRe like may also be provided instead of tRese recesses or grooves. TRese interruptions of tRe inner cylindrical surface cause tRe material adRering to tRe press screw to be torn oft or taken off, so tRat tRe above mentioned drawbacks are avoided and tRe material is at tRe same time Romogenized.
It will be seen that .the quoted paragraph is limited to the use of a “pressing screw” and to grooves or ribs whose size and mutual distance are so selected that the material adhering to the pr,ess screw will be torn off or taken off. The application appears to indicate that, within that particular field, longitudinal and transverse grooves may serve the same purpose. „ However, this is not an admission that any transverse grooves associated with a screw for any purpose are the equivalent of the particular longitudinal grooves disclosed and *998 claimed by the- appellant. It is only when the transverse grooves are designed to perform the function set forth in the application, or at least when that function is necessarily inherent in them, that any presumption of equivalence can arise.
An examination of the references shows that none of them contains any statement that the ribs or grooves which they disclose are effective in dislodging material which would' otherwise adhere to the screws; and that no such function is inherent in the devices shown.
Thus, in the Hale patent, the spiral grooves are said to act in combination with the screws to carry the pi at erial along. The patent further states that when a soft material is used there is a tendency for the material to clog in the grooves, and that that tendency is obviated by a specific shaping of the screws so that they coact with each other in such a manner as to prevent clogging. From this it is evident that the spiral grooves do not prevent clogging, since, if they did, the special shaping of the screws would not be necessary.
The Sharpneck patent does not disclose a stationary casing as required by the appealed claims. The grooves relied on are located in a casing which rotates about the screw in a direction opposite to that in which the screw rotates. There is nothing to indicate that the peat which is being crushed-in the machine, has any -tendency to adhere to the screw or that, if it did, the grooves in the casing would loosen it. Moreover, if the transverse grooves of Sharpneck were replaced by longitudinal groves, as apparently suggested in the rejection here under consideration, the device would be rendered inoperative for its intended purpose, since the spiral arrangement of the grooves is essential to the crushing operation for which it is designed.
In the Foyle patent the members which project from the casing wall clearly would not be effective to prevent the material being worked on from adhering to the screw. On the contrary, those members are said to resist the passage of the material and severely check its movement, which would cause it to be forced against the blades of the screws, thus, increasing, rather than relieving, any tendency it might have to adhere to the blades.
We are of the opinion that the references do not disclose or fairly suggest the use of transverse grooves in a screw extruder of such design as to prevent the sticking of material to the screw. Accordingly,, any admission which may be contained in appellant’s specification as to the equivalence of longitudinal and transverse grooves for that purpose is immaterial here.
It is also proper to note that there is a basic difference between appellant’s device and those of the references in that appellant is con *999 cerned with, the extrusion in a particular manner of materials which are already comminuted, whereas the references are designed primarily for working or breaking up materials, and any extrusion which takes place is largely incidental.
It thus appears that the apparatus claimed here differs substantially in structure and function from what is shown by the prior art, and that the differences are not of such a nature that it would be obvious to one skilled in the art to modify the devices of the references in such a manner, as to produce what is'claimed.
In addition to the longitudinal casing grooves above considered, claim 53 calls for internal grooves in the nozzle and claim 54 calls for a specific arrangement of passages in a nozzle for simultaneously extruding two materials. Those features are not in any way suggested by the references, and they provide additional reasons for the allowance of claims 53 and 54.
The decision of the Board of Appeals is reversed.
Jackson, Judge, retired, recalled to participate.
O’Connell, J., because of illness, did not participate in the hearing or decision of this case.